ELECTRONIC

**Feb. 19, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
## 09-80207-CiV-MARRA/JOHNSON
CASE NO.:

GREEN ISLAND HOLDINGS, LLC.,

     Plaintiff,

v.

BRITISH AMERICAN ISLE OF VENICE
(BVI), LTD, a British Virgin Islands Company,
and BRITISH-AMERICAN INSURANCE
COMPANY, LTD, a Bahamas Company,

     Defendants.

_____/

### COMPLAINT

    Plaintiff, GREEN ISLAND HOLDINGS, LLC, sues Defendants, BRITISH

AMERICAN ISLE OF VENICE (BVI), LTD, and BRITISH-AMERICAN INSURANCE

COMPANY, LTD (collectively "Defendants"), and states:

### Nature of the Action

    1.    This is an action to recover in excess of $38,274,359.00 due and owing

pursuant to a Promissory Note, as amended by a Note Modification Agreement, as well

as pursuant to a Guaranty. Moreover, through this action, Plaintiff seeks to foreclose on

its security interest in 100% of the membership interests in Green Island Ventures, LLC.

### The Parties

    2.    Plaintiff, GREEN ISLAND HOLDINGS, LLC ("HOLDINGS"), is a

Florida limited liability company with its principal place of business in Palm Beach

County, Florida.

3.     Defendant, BRITISH AMERICAN ISLE OF VENICE (BVI), LTD ("BAI"), is, upon information and belief, a British Virgin Islands company.

4.     Defendant, BRITISH-AMERICAN INSURANCE COMPANY, LTD ("BRITISH AMERICAN"), is, upon information and belief, a Bahamas company.

## Jurisdiction and Venue

5.     Defendants are subject to the personal jurisdiction of this Court inasmuch as they have engaged in a business venture in this State and have breached a contract in this State by failing to perform acts required by the contract to be performed in this State.

6.     Officers, Directors and/or representatives of the Defendants have travelled to Florida on a regular basis to negotiate, exercise oversight over, and conduct Defendants' business out of which this cause of action arises.

7.     The Promissory Note sued upon was executed by Robert Fullerton, Director of BAI, who at all relevant times maintained a place of business in Florida.

8.     The Guaranty sued upon was executed by Robert Fullerton, as Director of BRITISH AMERICAN, who at all relevant times maintained a place of business in Florida.

9.     BRITISH AMERICAN also maintained a place of business in Plantation, Broward County, Florida.

10.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

11.    Venue is appropriate in this Court inasmuch as the causes of action alleged herein accrued in whole or in part in the Southern District of Florida.

## **General Allegations**

12.     Plaintiff, HOLDINGS, was formerly the owner of 100% of the membership interests in Green Island Ventures, LLC, a Florida limited liability company ("Ventures").

13.     On or about January 7, 2008, HOLDINGS sold its membership interests in Ventures to BAI.

14.     In conjunction with the sale of Ventures' membership interest to BAI, the following documents were executed and delivered to Plaintiff:

        a.     That certain Purchase Money Promissory Note in the original principal amount of $56,544,359.82, a true and correct copy of which is attached hereto as **Exhibit "A"**;

        b.     That certain Pledge and Security Agreement executed by BAI in favor of Plaintiff through which HOLDINGS was granted a first priority security interest in the Ventures membership interests that were sold to BAI.  A true and correct copy of the Pledge and Security Agreement is attached hereto as **Exhibit "B"**;

        c.     That certain Guaranty executed by BRITISH AMERICAN in favor of HOLDINGS.  A true and correct copy of the Guaranty is attached hereto as **Exhibit "C"**.

15.     On or about September 9, 2008, HOLDINGS and BAI entered into that certain Note Modification Agreement, a true and correct copy of which is attached hereto as **Exhibit "D"**.  (Exhibits "A" and "D" will be collectively referred to as the "Note").

16.     Pursuant to the Note BAI was obligated to make a payment in the amount of $9,568,589.96 by or before January 15, 2009.

17.     BAI is in default of its obligations under the Note and Pledge and Security Agreement as a result of which a Default Notice was sent to Defendants on January 30, 2009. A true and correct copy of the Default Notice is attached hereto as **Exhibit "E".**

18.     Pursuant to the Default Notice, the indebtedness evidenced by the Note was accelerated as a result of which the entire principal balance of $38,274,359.82 became due and owing along with all interest at the default rate of 18%.

19.     All conditions precedent to the institution of this action have been performed, waived or otherwise satisfied.

20.     Plaintiff, HOLDINGS, has been required to retain the services of the undersigned counsel to represent its interests in this matter and has agreed to pay said firm a reasonable fee for its services.

## COUNT I – ACTION ON THE NOTE

Plaintiff, HOLDINGS, sues Defendant, BAI, repeats and realleges the allegations set forth in ¶¶ 2 – 20 above and further states:

21.     This is an action for damages in excess of $38 million.

22.     As more particularly alleged above, Defendant, BAI, is in default of its obligations under the Note by virtue of its failure to make the payment due on January 15, 2009 and all payments required thereafter.

23.     Plaintiff, HOLDINGS, is the owner and holder of the Note.

24.  HOLDINGS has previously declared, in writing, that the full amount of the outstanding indebtedness under the terms of the Note is now due and payable.

25.  The principal balance due under the Note is $38,274,359.82. Moreover, Defendant, BAI, is also liable for accrued interest at the default rate of 18%, plus attorneys' fees and costs that have been and will be incurred as a result of efforts to pursue Plaintiff's rights under the loan documents.

WHEREFORE, Plaintiff, HOLDINGS, demands judgment against Defendant, BAI, for damages in excess of $38,274,359.82, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II – ACTION TO FORECLOSE ON PLEDGE AND SECURITY AGREEMENT

Plaintiff, HOLDINGS, sues Defendant, BAI, repeats and realleges the allegations contained in ¶¶ 2 through 20 above and further states:

26.  This is an action to foreclose on a perfected security interest pursuant to the Note and the Pledge and Security Agreement.

27.  Defendant, BAI, gave Plaintiff, HOLDINGS, a first lien security interest and its right, title and interest in and to all of the membership interests of Ventures as security for its obligations under the Note.

28.  Plaintiff, HOLDINGS, now owns and holds the Note as well as the Pledge and Security Agreement.

29.  As is more fully set forth above, the Note is now in default and all sums due thereunder have been declared due and owing.

WHEREFORE, Plaintiff, HOLDINGS, demands judgment as follows:

a.      That the Court adjudge Plaintiff, HOLDINGS' interest in the collateral senior to and superior to the claim of Defendant;

b.      That the Court foreclose the interests of BAI to the collateral and order a sale of same;

c.      That the Court adjudge the amount due Plaintiff, HOLDINGS, pursuant to and under the Note and Pledge and Security Agreement, including unpaid principal, interest accruing at the default rate of 18%, plus all attorneys' fees and costs incurred in connection with the enforcement of Plaintiff's rights under the Note and Pledge and Security Agreement;

d.      That the Court grant HOLDINGS a deficiency judgment if the proceeds of the foreclosure sale are insufficient to pay HOLDINGS' claims; and

e.      That this Court retain jurisdiction for all further Orders as are deemed just and proper.

## COUNT III – ACTION ON THE GUARANTY

Plaintiff, HOLDINGS, sue Defendant, BRITISH AMERICAN, for breach of Guaranty, repeats and realleges the allegations set forth in ¶¶ 2 through 20 above and further states:

30.     This is an action for damages in excess of $38,274,359.82.

31.     As more particularly alleged above, BRITISH AMERICAN executed the Guaranty pursuant to which said Defendant guaranteed BAI's obligations under the Note.

32.     Defendant, BRITISH AMERICAN, is in breach of the Guaranty as a result of its failure to make payment of the entire balance due pursuant to the Note upon BAI's default.

33.     Demand has been made for payment, however, despite demand, BRITISH AMERICAN has failed to satisfy its obligations pursuant to the Guaranty.

34.     There is currently due and owing under the Guaranty the total amount of $38,274,359.82 plus interest at the default rate of 18% as well as attorneys' fees and costs that have been incurred in conjunction with the prosecution of this action.

WHEREFORE, Plaintiff, HOLDINGS, demands judgment in its favor against Defendant, BRITISH AMERICAN, for damages in excess of $38,274,359.82 plus interest at the default rate of 18%, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

Dated this _____ day of February, 2009.

DuBOSAR & PEREZ, P.A.
Attorneys for Plaintiff
120 East Palmetto Park Road
Suite 100
Boca Raton, Florida 33432
Telephone:     (561) 544-8980
Telecopy:     (561) 544-8988

By: _____
     Howard D. DuBosar
     Florida Bar No. 729108
     Ubaldo J. Perez, Jr.
     Florida Bar No.: 710075

## PURCHASE MONEY PROMISSORY NOTE

$56,544,359.82                                          January 7, 2008

FOR VALUE RECEIVED, the undersigned, BRITISH AMERICAN ISLE OF VENICE (BVI) LTD., a British Virgin Islands company (**"Maker"**), promises to pay to the order of GREEN ISLAND HOLDINGS, LLC, a Florida limited liability company (**"Lender"** or, together with any other subsequent holder of this Note, the **"Holder"**), the principal sum of FIFTY SIX MILLION FIVE HUNDRED FORTY FOUR THOUSAND THREE HUNDRED FIFTY NINE DOLLARS AND 82/100 ($56,544,359.82) in lawful money of the United States, which shall be legal tender in payment of all debts and dues, public and private, at the time of said payment, said principal, together with interest thereon as provided herein, to be payable as set forth below.

1.  TERM/MATURITY DATE.  The term of this Note commences on the date hereof and end on the later to occur of (a) December 1, 2008; or (b) thirty (30) days after the Development Order, as hereinafter defined, is obtained (the **"Maturity Date"**).

2.  INTEREST RATE.  Interest on the principal amount hereof outstanding from time to time shall accrue at the rate of 9% per annum, simple interest, from and including the date hereof until the date on which the entire principal balance hereof shall have been paid in full.  Accrued and unpaid interest shall be payable monthly, in arrears, commencing on February 1, 2008 and continuing on the first day of each calendar month thereafter until the Maturity Date. Notwithstanding the foregoing, only fifty percent (50%) of the accrued interest shall be payable monthly hereunder prior to the issuance of the Development Order, with the balance deferred until the Maturity Date (unless the Development Order is obtained prior to December 1, 2008, in which event (i) all accrued and unpaid interest will be due and payable within twenty (20) days of its being obtained and (ii) all subsequent interest payments shall be paid in full as and when they become due, without any portion thereof accruing).  Further, if the Development Order is not obtained by December 1, 2008, all interest accruing under this Note from and after December 1, 2008 shall continue to accrue and not be payable until the Maturity Date.

3.  PRINCIPAL PAYMENTS.  Principal shall be due and payable as follows:

    a.     A principal payment in the amount of THREE MILLION TWO HUNDRED SEVENTY THOUSAND AND NO/100 ($3,270,000.00) shall be due and payable on February 1, 2008.

    b.     The outstanding principal balance of this Note, together with all accrued and unpaid interest and all other amounts due hereunder, shall be due and payable on the Maturity Date. Notwithstanding the foregoing, if the Development Order has not been obtained by December 1, 2010 (as such date may be extended pursuant to the Third Amendment (defined herein)), then, unless the delay was caused by Maker's (or its affiliate's) gross negligence, willful misconduct or breach of any provision of Section 15 of the Third Amendment, all unpaid accrued interest and the unpaid principal balance shall be deemed excused in its entirety.

    c.     Maker shall have the right to prepay all or any part of the outstanding balance at any time without penalty.

    d.     Each payment shall be wire or electronically transferred so as to be deposited in the trust account of Holder's counsel, Proskauer Rose LLP, at Wachovia Bank, Jacksonville, Florida, prior to 5:00 PM Eastern time on the date such payment is due in accordance with the wire


PLAINTIFF'S EXHIBIT

transfer instructions attached hereto as Exhibit A. All payments due on a day that is not a business day shall be paid on the next succeeding business day.

4.    PLEDGE AND SECURITY AGREEMENT. As security for the payment of the indebtedness evidenced by this Note, the Maker has granted to Holder a Pledge and Security Agreement of even date herewith (the "**Security Agreement**"), pursuant to which Maker has granted a security interest in, and lien upon, its entire 100% membership in Green Island Ventures, LLC, a Florida limited liability company ("**Green Island Ventures**").

5.    DEFAULT RATE. From and after the Maturity Date or from and after the occurrence of an Event of Default, irrespective of any declaration of maturity, all amounts remaining unpaid or thereafter accruing hereunder shall bear interest at the Default Rate (as hereinafter defined) until paid. The "**Default Rate**" shall be a rate of interest equal to the eighteen percent (18%) per annum.

6.    INTEREST LIMITATION. Notwithstanding anything in this Note, the Security Agreement or any other agreements or arrangements with the Maker in connection with the loan evidenced by this Note to the contrary, in no event shall the amount of interest due hereunder, together with all amounts reserved, charged, or taken by Holder as compensation for fees, services, or expenses incidental to the making, negotiation or collection of the loan evidenced hereby, which are deemed to be interest under applicable law, exceed the maximum rate of interest on the unpaid principal balance hereof allowed from time to time by applicable law. If any sum is collected in excess of the applicable maximum rate of interest, the excess sum collected shall be applied to reduce the principal debt or be refunded to Maker, at Holder's option.

7.    CONSENT AND WAIVER. The Maker hereby: (a) consents to any forbearance or extension of the time or manner of payment hereof and to the release of all or any part of any security held by the Holder to secure payment of this Note and to the subordination of the lien of the Security Agreement and any other instrument of security securing this Note as to all or any part of the property encumbered thereby, all without notice to or consent of that party; (b) agrees that no course of dealing or delay or omission or forbearance on the part of the Holder in exercising or enforcing any of its rights or remedies hereunder or under any instrument securing this Note shall impair or be prejudicial to any of the Holder's rights and remedies hereunder or to the enforcement hereof and that the Holder may extend, modify or postpone the time and manner of payment and performance of this Note and any instrument securing this Note, may grant forbearances and may release, wholly or partially, any security held by the Holder as security for this Note and release, partially or wholly, any person or party primarily or secondarily liable with respect to this Note, all without notice to or consent by any party primarily or secondarily liable hereunder and without thereby releasing, discharging or diminishing its rights and remedies against any other party primarily or secondarily liable hereunder; (c) waives notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, notice of dishonor and notice of protest and notices of any and all action at any time taken or omitted by the Holder in connection with this Note or any instrument securing this Note and waives all requirements necessary to hold the Maker liable under this Note or the Security Agreement; (d) waives any "venue privilege", "diversity of citizenship privilege", or "sovereign immunity" which Maker has now or may have in the future, and does hereby specifically agree, notwithstanding the provision of any state or federal law to the contrary, that the venue for the enforcement, construction or interpretation of this Note shall be the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida.

8.    <u>ATTORNEYS' FEES</u>. The Maker agrees to pay the Holder in addition to the principal, and any interest due and payable hereon, reasonable paralegal fees, attorneys' fees and costs, whether or not an action be brought, for the services of counsel employed after maturity or default to collect this Note or any principal or interest due hereunder, or to protect the security, if any, or enforce the performance of any other agreement contained in this Note or in any instrument of security executed in connection with the loan evidenced hereby, including, but not limited to costs, paralegal fees and attorneys' fees and costs on any trial, or appellate proceedings, or in any proceedings under the United States Bankruptcy Code or in any post judgment proceedings.

9.    <u>EVENTS OF DEFAULT</u>. The happening of any of the following events shall constitute an Event of Default hereunder:

(a) failure of the Maker to pay any principal, interest or any other sums required hereunder within ten (10) days of when due under this Note;

(b) the conveyance by Green Island Ventures of any interest in the Property (as defined in the Purchase Agreement (defined herein)) or any part thereof, legal or equitable unless, simultaneously therewith, Maker prepays the principal amount of this Note in an amount equal to eighty percent (80%) of the Net Proceeds derived by Green Island Ventures therefrom. "**Net Proceeds**" means the net cash proceeds paid to Green Island Ventures (or affiliates thereof) as reflected on the closing statement for the relevant transaction after payment of any amounts required to be paid to the holder of the First Mortgage (as defined in the Third Amendment) as a consequence of such transaction, reasonable attorneys' fees, title insurance premiums, documentary stamp taxes, recording fees and brokerage or similar commissions or fees payable to the Maker or any of its affiliates in connection with such transaction;

(c) British American Insurance Company Limited shall cease to Control either or both of the Maker and Green Island Ventures. "**Control**" means the possession of the power to direct or cause the direction of the management and policies of a person or entity arising from the ownership, directly or indirectly, of in excess of fifty percent of its voting securities or voting interests;

(d) the mortgage, pledge or grant of any lien, encumbrance or security interest in the Property or any part thereof as collateral security for any other loan obligation or forbearance (other than the Land Financing (as defined in the Purchase Agreement)); or

(e) a default shall occur under the Security Agreement which is not cured within the applicable grace period.

10.    <u>ACCELERATION</u>. If an Event of Default shall occur hereunder and such default shall continue for ten (10) days after Holder gives Maker written notice of such default and the intent to accelerate payment in accordance with the notice provisions of the Security Agreement, then at the option of the Holder, the entire principal sum then remaining unpaid shall immediately become due and payable without further notice or demand, and said principal shall bear interest from the date of such default or Event of Default at the highest legal rate permitted by law, from time to time, to be charged by Holder. Failure to exercise the above options shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

11.    <u>OTHER REMEDIES</u>. If an Event of Default shall occur, Holder shall have, in addition to its remedies under the Security Agreement, this Note, and/or any other instrument securing or executed in conjunction with the loan evidenced hereby and applicable law, all the remedies of a

secured party under the Uniform Commercial Code of the State of Florida and, without limiting the generality of the foregoing, Holder shall have the right, at its option, and without notice or demand, to declare the entire amount of this Note remaining unpaid, and all other liabilities selected by Holder, immediately due and payable, less any unearned interest or other charges and any rebates required by law (it being the intention hereof that under no circumstances shall Holder be entitled to receive at any time any charges not allowed or permitted by law or any interest in excess of the maximum allowed by law). Upon disposition of any collateral after the occurrence of an Event of Default, the Maker shall be and remain liable for any deficiency; and Holder shall account to undersigned for any surplus, but Holder shall have the right to apply all or any part of such surplus (or to hold the same as a reserve) against any and all other liabilities of undersigned to Holder.

12.   FLORIDA LAW. This Note is executed under seal and constitutes a contract under the laws of the State of Florida, and shall be enforceable in a court of competent jurisdiction in that State, regardless of the State in which this Note is being executed.

13.   HEADINGS. The headings of the paragraphs contained in this Note are for convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

14.   DOCUMENTARY STAMPS. Documentary stamp tax on this Note in the amount required by Florida law has been paid by the Maker.

15.   DEVELOPMENT ORDER.  As used herein the term "Development Order" shall mean a development order issued by Osceola County which is final and in effect and not subject to appeal with respect to the Application for Approval of the Development of the Regional Impact for the Green Island DRI, dated March 3, 2006 (the "Application").  Notwithstanding anything in this Note to the contrary, (i) if the Development Order is obtained with less than seventy percent (70%) of the density as reflected in the Application on the date hereof, then all unpaid accrued interest and the unpaid principal balance hereof shall be deemed excused in its entirety and (ii) if the Development Order is obtained with in excess of seventy percent (70%), but less than ninety percent (90%), of the density as reflected in the Application on the date hereof, then the Applicable Portion of this Note shall be deemed excused in its entirety.  No portion of any unpaid accrued interest and no portion of the unpaid principal balance hereof shall be excused (except as set forth in Section 3.b. hereof, if applicable, if the Development Order is obtained with ninety percent (90%) or more of the density as reflected in the Application on the date hereof.  "Applicable Portion" means an amount of the original principal amount of this Note multiplied by a percentage, which percentage shall be derived by (A) calculating the percentage by which the density reflected in the Development Order differs from (i.e. is less than) the density set forth in the Application on the date hereof (the "Shortfall") and (B) multiplying such Shortfall by seventy five percent (75%).  For example, if the Development Order approves eighty percent (80%) of the density set forth in the  Application (i.e. a 20% Shortfall), then the Applicable Portion to be excused would be $8,481,653.97 (i.e. multiply the original principal amount hereof ($56,544,359.82) by 15% (75% of the 20% Shortfall)).

16.   RIGHT OF SETOFF. Maker shall have the right to setoff against amounts due under this Note the amount of any loss or damage that Maker has actually incurred as a result of the breach of any representation or warranty by Holder, not previously waived by Maker, under the terms of that certain Agreement of Purchase and Sale dated as of July 21, 2007 as amended by First Amendment to Purchase Agreement dated as of August 3, 2007, that certain Second Amendment to Purchase Agreement dated as of September 17, 2007 and that certain Third Amendment to

Purchase Agreement dated as of December 21, 2007 (the **"Third Amendment"**) that occurs within one year from the date of this Note (the "**Purchase Agreement**"). Maker shall not be entitled to exercise any rights or remedies (other than the foregoing right of setoff) with respect to any such losses or damages unless and until the aggregate amount of such losses and damages of Maker with respect to which it has set off against this Note exceed the entire indebtedness (principal and interest) represented by this Note, as the same may be reduced or excused as provided in Section 15 hereof.

17.    MISCELLANEOUS.

      a.    The term **"Maker"**, as used herein, in every instance shall include the Maker's successors, legal representatives and assigns, and shall denote the singular and/or plural, the masculine and/or feminine, and natural and/or artificial persons whenever and wherever the context so requires or admits.

      b.    This Note may not be changed orally, but only by an agreement in writing, signed by the Maker, and the Holder or their respective successors and assigns.

All payments made on the indebtedness evidenced by this Note shall be applied first to repayment of monies paid or advanced by Holder on behalf of the Maker in accordance with the terms of the Security Agreement securing this Note, and thereafter shall be applied to payment of accrued interest, if any, and lastly to payment of principal.

MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE HOLDER MAKING THE LOAN OR EXTENSION OF CREDIT EVIDENCED BY THIS NOTE.

BRITISH AMERICAN ISLE OF VENICE (BVI) LTD., a British Virgin Islands company

By: _____

Name: _____ ROBERT FULLERTON

Title: _____ DIRECTOR

_____

Exhibit "A"

Wire Instructions for Payment

TO:                                        WACHOVIA BANK
                                           214 NORTH HOGAN STREET
                                           JACKSONVILLE, FLORIDA 32202

                                           ABA # 063-000-021

FOR THE ACCOUNT OF:                        PROSKAUER ROSE LLP TRUST
                                           ACCOUNT

                                           ACCOUNT # 2000016163162

5258/75305-001 Current/10387820v9

## PLEDGE AND SECURITY AGREEMENT

THIS PLEDGE AND SECURITY AGREEMENT (this "Agreement") is made as of the 7th day of January, 2008, by and between BRITISH AMERICAN ISLE OF VENICE (BVI), LTD., a British Virgin Islands company (the "Pledgor") and GREEN ISLAND HOLDINGS, LLC, a Florida limited liability company (the "Pledgee").

## RECITALS

WHEREAS, pursuant to that certain Agreement for Purchase and Sale, dated as of July 21, 2007 (the "Original Purchase Agreement"), as amended by: (i) that certain First Amendment to Purchase Agreement, dated as of August 3, 2007 (the "First Amendment"); (ii) that certain Second Amendment to Purchase Agreement, dated as of September 17, 2007 (the "Second Amendment"); and (iii) that certain Third Amendment to Purchase Agreement, dated as of December 21, 2007 (the "Third Amendment") (the Original Purchase Agreement, First Amendment, the Second Amendment and the Third Amendment are hereinafter collectively referred to as the "Purchase Agreement"), the Pledgee, as seller, sold, and the Pledgor, as purchaser, purchased one hundred percent (100%) of the issued and outstanding membership interests in Green Island Ventures, LLC, a Florida limited liability company ("Green Island" and such membership interests, the "Membership Interest");

WHEREAS, pursuant to the Purchase Agreement, a portion of the Purchase Price for the Membership Interest was paid by the issuance to the Pledgee of a FIFTY SIX MILLION FIVE HUNDRED FORTY FOUR THOUSAND THREE HUNDRED FIFTY NINE DOLLARS AND 82/100 ($56,544,359.82) Purchase Money Promissory Note (the "Note").

WHEREAS, the Pledgor has agreed to deliver and pledge the Membership Interest and all other Collateral (as defined below), if and when it comes into existence, to the Pledgee to secure to Pledgee the payment of: (i) all amounts due under the Note; and (ii) all Protective Advances, as hereinafter defined.

NOW THEREFORE, in order to induce the Pledgee to consummate the sale of the Membership Interest to the Pledgor and to accept the Note from the Pledgor, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      Pledge. To secure the payment and performance by the Pledgor under the Note and the repayment of all Protective Advances, if any, made by the Pledgee hereunder, the Pledgor hereby pledges to the Pledgee, and grants to the Pledgee a security interest (as defined in the Uniform Commercial Code as enacted in the State of Florida) in, all of the Pledgor's now existing and hereafter arising right, title and interest in, to and under the following (collectively, the "Collateral"):

(1)     The Membership Interest, together with all new, substituted and additional membership interests issued at any time with respect to the



PLAINTIFF'S
EXHIBIT
B

Membership Interest and, to the extent issued, the certificates representing the Membership Interest and all such additional membership interests (the "Pledged Interests"); and

(2)     Any and all now existing and hereafter arising rights of the holder of the Pledged Interests with respect to rights to payment of any kind, including cash and non-cash distributions, instruments and other property, from time to time received, receivable or otherwise distributed on account of, or in exchange for, the Pledged Interests.

To the extent that the Membership Interest is represented by a membership certificate, the Pledgor will deliver such certificate, together with a stock power executed in blank, to the Pledgee, upon execution and delivery of this Agreement by the parties hereto.  The Pledgor will immediately deliver to the Pledgee all other Collateral upon the Pledgor's receipt of such Collateral.  The Pledged Interests and all such other Collateral shall be held by and pledged to the Pledgee subject to the terms of this Agreement for so long as any of the Secured Obligations (as defined below) remain outstanding.   Upon full and final satisfaction of the Secured Obligations, the Pledgee shall release the Pledged Interests and all such other Collateral from the lien of this Agreement in accordance with Section 8 below.

2.     Indebtedness and Obligations Secured.   The security interest created hereby is given for the purpose of securing payment to the Pledgee by the Pledgor of: (i) any and all obligations and liabilities of the Pledgor to the Pledgee under the Note; and (ii) all Protective Advances (collectively, the "Secured Obligations").  As used herein "Protective Advances" means sums advanced or expended by Pledgee in order to cure any defaults of Green Island not cured within the applicable grace period under the First Mortgage, as defined in the Third Amendment.  Pledgor hereby agrees to give the Pledgee immediate written notice of any default or claimed default by Green Island under the First Mortgage.  Pledgee (or any affiliate or designee of Pledgee) shall have the right to make Protective Advances, which Protective Advances shall be repayable by Pledgor on Pledgee's demand.

3.     Representations and Warranties of the Pledgor.   The Pledgor hereby represents and warrants to the Pledgee that:

a.     Assuming the accuracy of the Pledgee's representations and warranties in the Purchase Agreement, the Pledgor is the sole record and beneficial owner and holder of the Membership Interest;

b.     Assuming the accuracy of the Pledgee's representations and warranties in the Purchase Agreement, there exist no outstanding options or other rights to acquire, directly or indirectly, any equity interest in Green Island.

c.     The Pledgor has granted no security interest in and, assuming the accuracy of the Pledgee's representations and warranties in the Purchase Agreement, there exists no lien or other encumbrance on any Collateral or the proceeds thereof, except for the lien in favor of the Pledgee created under this Agreement;

2

d.      This Agreement constitutes the legal, valid and binding obligation of the Pledgor, enforceable in accordance with its terms;

e.      The execution and delivery of this Agreement by the Pledgor, the consummation of the transactions herein, and the compliance with the terms and provisions hereof have been duly authorized by all necessary corporate or other action on the part of the Pledgor;

f.      None of the execution and delivery of this Agreement by the Pledgor, the consummation of the transactions herein, or compliance with the terms and provisions hereof, will (A) conflict with, result in a breach of, constitute a default under, or require any consent (other than any consent that has been obtained) under, (i) any applicable law or regulation, or any order, writ, injunction or decree of any court or governmental authority or agency or (ii) any agreement or instrument to which the Pledgor is a party or by which the Pledgor is bound or subject, or (B) result in the creation or imposition of any lien upon any of the assets of the Pledgor;

4.      Covenants of the Pledgor.  Until such time as the Secured Obligations have been fully and finally discharged, the Pledgor will not: (i) sell, assign, exchange, transfer, encumber, pledge, hypothecate or otherwise dispose of any of the Collateral or any part thereof or any interest therein; (ii) cause or permit Green Island to issue any additional equity interests or rights to acquire, directly or indirectly, additional equity interests; (iii) merge with or into, or convert into (or cause or permit Green Island to merge with or into, or convert into) any other entity, unless (A) such entity is owned or Controlled (defined below) by British American Insurance Company Limited, (B) the entity resulting from or surviving such transaction (the "Resulting Entity") has a tangible net worth at least equal to that of the Pledgor or Green Island, as applicable, and (C) the indebtedness secured hereby does not, as a result of such transaction, become subordinate to any other indebtedness for borrowed money of the Resulting Entity; (iv) cause or permit Green Island to grant or suffer to exist any lien on the Property securing any indebtedness for borrowed money, other than the lien of the First Mortgage (as defined in the Third Amendment) securing a principal amount not in excess of $159,000,000; (v) cause or permit Green Island to operate outside the ordinary course of its business; (vi) cause or permit Green Island to default in any of its obligations under the documents evidencing or securing the Land Financing (as defined in the Purchase Agreement) beyond the applicable grace period set forth in the documents evidencing the Land Financing; or (vii) take any action with respect to the Collateral that is prohibited by this Agreement.  "Control" (and terms of similar import) means the possession of the power to direct or cause the direction of the management and policies of a person or entity arising from the ownership, directly or indirectly, of in excess of fifty percent of its voting securities or voting interests.

5.      Events of Default; Remedies; Application of Proceeds.

a.      Events of Default.  The occurrence of any of the following shall constitute an "Event of Default" hereunder:

3

(1)     The breach by the Pledgor of any term, provision, representation, warranty or covenant contained in this Agreement not cured within thirty (30) days following written notice;

(2)     The Pledgor's failure to make any payment as and when due under the Note (subject to any grace period set forth in the Note) or the occurrence of any other "Event of Default" (as defined in the Note);

(3)     The institution of a Bankruptcy proceeding with respect to the Pledgor or any guarantor of the Pledgor's obligations under the Note (each, a "Guarantor"). "Bankruptcy" shall mean (i) the adjudication of the Pledgor or a Guarantor as bankrupt or insolvent, (ii) the institution by or against the Pledgor or a Guarantor of a petition for arrangement or of any other type of insolvency proceeding under the United States Bankruptcy Code, as amended (but, with respect to an involuntary proceeding, only if such proceeding is not discharged within 90 days), (iii) the making by the Pledgor or a Guarantor of a general assignment for the benefit of creditors, (iv) the appointment of a liquidator, administrator, receiver or trustee in bankruptcy of the Pledgor or a Guarantor or the Pledgor's or any Guarantor's respective assets or (v) the taking, making or institution of any like or similar act or proceeding involving the Pledgor or a Guarantor.

b.     Remedies. Following any Event of Default, the Pledgee may, in its sole discretion and in addition to all other rights and remedies that the Pledgee may have under this Agreement and/or under applicable law, including, without limitation, all rights and remedies of a secured party under the Uniform Commercial Code (all of which may be exercised with or without further notice to the Pledgor, unless specified herein):

(1)     Upon 20 days' prior written notice to the Pledgor of the time and place, with respect to the Collateral or any part thereof which shall then be or shall thereafter come into the possession, custody or control of the Pledgee or any of its agents, sell, assign or otherwise dispose of all or any part of such Collateral, at such place or places as the Pledgee deems best, and for cash or on credit or for future delivery (without thereby assuming any credit risk), at public or private sale, without demand of performance or notice of intention to effect any such disposition or of time or place thereof (except such notice as is required above or by applicable statute and cannot be waived) and the Pledgee or anyone else may be the purchaser, assignee or recipient of any or all of the Collateral so disposed of at any public or private sale (the Pledgor hereby waiving any requirement for a public sale), and thereafter hold the same absolutely free from any claim or right of whatsoever kind, including any right or equity of redemption (statutory or otherwise), of the Pledgor, any such demand, notice or right and equity being hereby expressly waived and released. The Pledgee may, without publication, but upon at least five days notice, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place to

4

which the same may be so adjourned.  The Pledgee shall not incur any liability as a result of the sale of the Collateral, or any part thereof, at any private sale pursuant to this Section that is conducted in a commercially reasonable manner. The Pledgor hereby waives any claims against the Pledgee arising by reason of the fact that the price at which the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Secured Obligations, even if the Pledgee accepts the first offer received and does not offer the Collateral to more than one offeree (which single offeree may be the Pledgee).  The Pledgor hereby agrees that any such private sale shall be deemed to be commercially reasonable;

(2)    Accelerate the indebtedness represented by the Note and all other indebtedness secured hereby;

(3)    Apply all or any part of the Collateral to the Secured Obligations in such order and priority as shall be selected by the Pledgee;

(4)    Exercise all rights, powers and privileges with respect to the Collateral to the same extent as the Pledgor is entitled to exercise such rights, powers and privileges;

(5)    In the name of the Pledgee or in the name of the Pledgor or otherwise, demand, sue for, collect or receive any money or property, at any time payable or receivable on account of or in exchange for any of the Collateral;

(6)    In connection with a sale of the Pledged Interests, cause each purchaser of all or any part of any Pledged Interests to be admitted as a new or additional member of Green Island to the extent of such Pledged Interests and cause the Pledgor to withdraw as a member and/or manager of Green Island;

(7)    Exercise any and all rights and remedies of the Pledgor under or in connection with the operating agreement of Green Island or otherwise in respect of the Collateral.

c.    <u>Application of Proceeds</u>.  Except as otherwise herein expressly provided, the proceeds of any collection, sale or other realization of all or any part of the Collateral pursuant hereto, and any other cash at the time held by the Pledgor under this Section 5, shall be applied by the Pledgor:

(1)    First, to the payment of the costs and expenses of such collection, sale or other realization, including reasonable out-of-pocket costs and expenses of the Pledgor and the reasonable fees and expenses of its agents and counsel, and all reasonable expenses and advances made or incurred by the Pledgor in connection therewith;

(2)    Next, to the payment in full of the Secured Obligations; and

(3)     Finally, to the payment to the Pledgor of any surplus then remaining.

6.     <u>Voting Rights; Distributions</u>.  So long as no Event of Default occurs and remains continuing:

a.     <u>Voting Rights</u>.  The Pledgor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Collateral, or any part thereof, for any purpose not inconsistent with the terms of this Agreement.

b.     <u>Distribution Rights</u>.  The Pledgor shall be entitled to receive all cash distributions paid in respect of the Collateral; provided, however, that any and all such distributions received in the form of additional membership interests or other securities, warrants, options or other rights to acquire, directly or indirectly, additional membership interests or other securities shall be, and the certificates, if any, representing such membership interests or other securities shall forthwith be delivered to the Pledgee to hold as pledged Collateral and shall, if received by the Pledgor, be received in trust for the benefit of the Pledgee, be segregated from the other property of the Pledgor, and forthwith be delivered to the Pledgee as pledged Collateral in the same form as so received (with any necessary endorsements).

7.     <u>Rights During Event of Default</u>.  So long as an Event of Default has occurred and is continuing:

a.     <u>Voting and Distribution Rights</u>.  At the option of the Pledgee, all rights of the Pledgor to exercise the voting and other consensual rights that the Pledgor would otherwise be entitled to exercise pursuant to Section 6.a. above, and to receive the distributions that the Pledgor would otherwise be authorized to receive and retain pursuant to Section 6.b. above, shall cease, and all such rights thereupon shall become vested in the Pledgee, who thereupon shall have the sole right to exercise such voting and other consensual rights and to receive and to hold as pledged Collateral such distributions.

b.     <u>Distributions Held in Trust</u>.  All dividends and other distributions that are received by the Pledgor contrary to the provisions of this Agreement shall be received in trust for the benefit of the Pledgee, shall be segregated from other funds of the Pledgor, and forthwith shall be paid over to the Pledgee as pledged Collateral in the same form as so received (with any necessary endorsements).

c.     <u>Irrevocable Proxy</u>.  Without limiting any rights or powers granted by this Agreement to the Pledgor while no Event of Default has occurred and is continuing, during the continuance of any Event of Default, the Pledgee is hereby appointed the attorney-in-fact of the Pledgor for the purpose of carrying out the provisions of Section 5 and this Section 7 and taking any action and executing any instruments which the Pledgee may deem necessary or advisable to accomplish the

6

purposes hereof, which appointment as attorney-in-fact is irrevocable and coupled with an interest. Without limiting the generality of the foregoing, the Pledgee shall have the right and power to receive, endorse and collect all checks made payable to the order of the Pledgor representing any payment or other distribution in respect of the Collateral or any part thereof and to give full discharge for the same.

8.    Release of Collateral.

a.    This Agreement, the Collateral and all obligations of the Pledgor hereunder shall be released when the Secured Obligations have been fully and finally discharged.

b.    Upon the release of any Collateral pursuant to this Section 8, the Pledgee will execute, deliver, file and record all documents and instruments, and will take all other actions reasonably required by the Pledgor, to evidence such release (including, without limitation, the filing of appropriate UCC termination statements).

9.    Waivers and Consents. The Pledgor agrees that upon the occurrence and during the continuance of any Event of Default, the Pledgee may enforce this Agreement independently of any other remedy or security that the Pledgee, at any time, may have or hold in connection with the Note and further agrees that the Pledgee may proceed against the Collateral in such order as the Pledgee shall determine in its sole and absolute discretion.

10.    Cumulative Remedies. The rights, powers, and remedies of the Pledgee hereunder are cumulative and not exclusive of any other right, power, or remedy that it would otherwise have.

11.    Notices. All notices required or permitted to be delivered hereunder shall be in writing and shall be (as elected by the person giving such notice): (i) hand delivered by messenger or courier service; (ii) mailed by registered or certified mail (postage prepaid, return receipt requested); or (iii) sent by recognized overnight courier service. Notices shall be delivered to the respective parties at the addresses set forth on Schedule I hereto (or at such other address as a party may specify by written notice in accordance with this paragraph). Each such notice shall be deemed delivered (a) on the date delivered if by personal delivery; (b) on the date upon which the return receipt is signed or delivery is refused, if mailed; or (c) on the second business day following delivery to a recognized overnight courier service for next business day delivery.

12.    Further Assurances. The parties shall cooperate and take such actions, and execute such other documents as either may reasonably request in order to carry out the provisions or purpose of this Agreement. Without limiting the generality of effect of the foregoing, the Pledgor agrees to execute and deliver on demand such other security agreements, financing statements and other instruments as the Pledgee may request in order to perfect its security interest or to impose the lien hereof more specifically upon any Collateral.

7

13. <u>Entire Agreement; Amendments and Waivers</u>. This Agreement (together with the Note, the Purchase Agreement and each other document executed and delivered in connection with the Purchase Agreement) constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understanding, negotiations and discussions, whether oral or written, of the parties. No supplement, amendment, modification or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

14. <u>Binding Agreement</u>. This Agreement and the terms, covenants, and conditions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that the Pledgor shall not be permitted to transfer, convey, or assign this Agreement or any interest herein without the prior written consent of the Pledgee.

15. <u>Invalidity</u>. In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

16. <u>Governing Law</u>. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

17. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each one of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

18. <u>Enforcement Costs</u>. If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, sales and use taxes, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, taxes, costs and expenses incident to arbitration, appellate, bankruptcy and post-judgment proceedings), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled. Attorneys' fees shall include, without limitation, paralegal fees, investigative fees, administrative costs, sales and use taxes and all other charges billed by the attorney to the prevailing party.

19. <u>Submission to Jurisdiction</u>. Each of the parties to this Agreement irrevocably and unconditionally (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Agreement shall be brought in the circuit court located in Osceola County, Florida or the court of the United States, Middle District of Florida; (b) consents and submits to the jurisdiction of each such court located in any such suit, action or proceeding; and

(c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts.

9

20.   <u>Waiver of Jury Trial</u>.   THE PARTIES HERETO MUTUALLY AND WILLINGLY WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY AND ALL CLAIMS MADE BETWEEN THEM WHETHER NOW EXISTING OR ARISING IN THE FUTURE, INCLUDING WITHOUT LIMITATION, ANY AND ALL CLAIMS, DEFENSES, COUNTERCLAIMS, CROSSCLAIMS, THIRD PARTY CLAIMS AND INTERVENOR'S CLAIMS ARISING FROM OR RELATED TO THE NEGOTIATION, EXECUTION AND PERFORMANCE OF THE TRANSACTIONS TO WHICH THIS DOCUMENT RELATES.

**[Signatures appear on next page]**

5258/75305-001 Current/10423177v7                                          12/24/2007 01:25 AM

IN WITNESS WHEREOF, the parties have duly executed this Pledge and Security Agreement on the date first above written.

Pledgor:

BRITISH AMERICAN ISLE OF VENICE (BVI), LTD., a British Virgin Islands company

By _____
Name:     *ROBERT FULLERTON*
Title:     *DIRECTOR*

Pledgee:

GREEN ISLAND HOLDINGS, LLC, a Florida limited liability company

By _____
Name:   Charles Pratt
Title:   Manager

12

5258/75305-001 Current/10423177v7                    12/24/2007 01:25 AM

IN WITNESS WHEREOF, the parties have duly executed this Pledge and Security Agreement on the date first above written.

Pledgor:

BRITISH AMERICAN ISLES OF VENICE (BVI), LTD., a British Virgin Islands company

By _____
Name:
Title:

Pledgee:

GREEN ISLAND HOLDINGS, LLC, a Florida limited liability company

By _____
Name:   Charles Pratt
Title:    Manager

[Signature Page to Pledge and Security Agreement]

## SCHEDULE I

### NOTICE ADDRESSES

| | |
|---|---|
| If intended for Pledgor: | British American Isle of Venice (BVI), LTD.<br>c/o BA Management Services Inc.<br>950 S. Pine Island Road, Suite A150<br>Plantation, Florida  33324.<br>Attn:  Attention: Robert Fullerton |
| with a copy to: | BA Management Services Inc.<br>11-13 Fifth Street<br>Barataria, Trinidad, West Indies<br>Attention: Gabrielle Patrick, Esq. |
| with a further copy to: | Holland & Knight LLP<br>701 Brickell Avenue, Suite 3000<br>Miami, Florida  33131<br>Attn: William R. Bloom, Esq.<br>Telephone No: (305) 374-8500<br>Facsimile No: (305) 789-7799 |
| If intended for Pledgee: | Green Island Holdings, LLC<br>1203 Captains Way<br>Jupiter, Florida  33477<br>Attn: Charles Pratt |
| with a copy to: | Proskauer Rose, LLP<br>2255 Glades Road<br>Boca Raton, Florida  33431<br>Attn:  Andrew D. Levy, Esq.<br>Telephone No: (561) 995-4751<br>Facsimile No: (561) 241-7145 |

12

[Signature Page to Pledge and Security Agreement]

## GUARANTY

This Guaranty (this "Guaranty"), dated and effective as of January 7, 2008, is made by **BRITISH-AMERICAN INSURANCE COMPANY LIMITED**, a Bahamas company having an address at c/o BA Management Services Inc., 950 S. Pine Island Road, Suite A150, Plantation, Florida 33324, Attention: Robert Fullerton (the "Guarantor"), in favor of **GREEN ISLAND HOLDINGS, LLC**, a Florida limited liability company with an address at 1203 Captains Way, Jupiter, Florida 33477 (the "Beneficiary").

1.    <u>Guaranty of Borrower's Obligations</u>.  The Guarantor hereby guarantees the due and punctual payment and performance of all obligations that are or at any time may be or become due from or owing by BRITISH AMERICAN ISLE OF VENICE (BVI) LTD., a British Virgin Islands company (the "Borrower"), pursuant to any provisions of: (i) the Purchase Money Promissory Note, dated January 7, 2008, in the original principal amount of FIFTY SIX MILLION FIVE HUNDRED FORTY FOUR THOUSAND THREE HUNDRED FIFTY NINE DOLLARS AND 82/100 ($56,544,359.82) (the "Note") (the "Guaranteed Obligations").  The Guarantor undertakes and agrees that, if for any reason the Borrower does not comply with any such Guaranteed Obligations within the applicable grace period set forth in the Note, the Guarantor will comply with such Guaranteed Obligations, in the manner provided in the Note, on written demand by the Beneficiary.

2.    <u>Continuing Guaranty</u>.  This is a continuing guaranty, and the obligations of the Guarantor under this Guaranty are and will remain in full force and effect by way of continuing security until the Guaranteed Obligations have been fully and finally paid and discharged.

3.    <u>Absolute and Unconditional Guaranty</u>.  This is also an absolute and unconditional Guaranty pursuant to which the obligations of the Guarantor may be enforced without first having recourse to the Borrower, any other person or any other agreement, security, guaranty or indemnity.  ACCORDINGLY, THE GUARANTOR WAIVES ALL RIGHTS TO CLAIM PRIOR EXHAUSTION OF REMEDIES BY THE BENEFICIARY AND AGREES THAT DEMANDS UNDER THIS GUARANTY MAY BE ENFORCED FROM TIME TO TIME IRRESPECTIVE OF WHETHER ANY STEPS OR PROCEEDINGS ARE BEING OR HAVE BEEN TAKEN AGAINST THE BORROWER AND/OR ANY OTHER PERSON OR ARE BEING OR HAVE BEEN TAKEN TO ENFORCE ANY OTHER SECURITY, GUARANTY OR INDEMNITY.

4.    <u>Successors and Assigns</u>.  This Guaranty shall inure to the benefit of the Beneficiary and its successors and assigns.  The obligations of the Guarantor under this Guaranty shall be binding on the Guarantor and its successors and assigns.  The Guarantor may not assign its obligations under this Guaranty without the prior written approval of the Beneficiary, which may be withheld in the Beneficiary's sole and absolute discretion.

5.    <u>Representations and Warranties</u>.  Guarantor represents and warrants to the Beneficiary that:

(a)    The execution and delivery of this Guaranty by the Guarantor, the consummation of the transactions herein, and the compliance with the terms and provisions

**PLAINTIFF'S EXHIBIT**

hereof have been duly authorized by all necessary corporate or other action on the part of the Guarantor;

(b)     None of the execution and delivery of this Guaranty by the Guarantor, the consummation of the transactions herein, or compliance with the terms and provisions hereof, will (A) conflict with, result in a breach of, constitute a default under, or require any consent (other than any consent that has been obtained) under, (i) any applicable law or regulation, or any order, writ, injunction or decree of any court or governmental authority or agency or (ii) any agreement or instrument to which the Guarantor is a party or by which the Guarantor is bound or subject, or (B) result in the creation or imposition of any lien upon any of the assets of the Guarantor;

(c)     This Guaranty constitutes a valid and binding obligation of the Guarantor, enforceable against such Guarantor in accordance with its terms;

(d)     The Guarantor legally and beneficially owns one hundred percent (100%) of the issued and outstanding equity interests of the Borrower; and

(e)     The Guarantor was solvent immediately prior to the execution and delivery of this Guaranty, is now solvent and has not been, nor will it be, rendered insolvent by virtue of its execution and delivery of this Guaranty.

6.     Waiver of Defenses.  GUARANTOR SPECIFICALLY WAIVES ANY AND ALL DEFENSES TO ANY ACTION OR PROCEEDING BROUGHT TO ENFORCE THIS GUARANTY OR ANY PART OF THIS GUARANTY, EITHER AT LAW OR IN EQUITY, EXCEPT FOR THE DEFENSE THAT THE GUARANTEED OBLIGATION CLAIMED BY THE BENEFICIARY TO BE DUE HAS BEEN FULLY AND FINALLY PAID AND DISCHARGED.

7.     Waiver of Jury Trial.   GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY DOCUMENT EXECUTED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER ORAL OR WRITTEN) OR ACTIONS OF OR BY THE GUARANTOR OR THE BENEFICIARY.

8.     Submission to Jurisdiction; Attorneys' Fees.   Guarantor irrevocably and unconditionally: (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty shall be brought in the circuit court located in Osceola County, Florida or the federal district court of the United States, Middle District of Florida; (b) consents and submits to the jurisdiction of each such court located in any such suit, action or proceeding; and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts.  Guarantor further agrees to pay all costs of collection, including reasonable attorneys' fees, costs and other legal expenses incurred by the Beneficiary in attempting to enforce the obligations of the Guarantor under this Guaranty.

9. <u>Notices</u>. All notices, requests, consents and other communications under this Guaranty: (a) shall be in writing and shall be (as elected by the person giving such notice): (i) hand delivered by messenger or courier service, (ii) mailed by registered or certified mail (postage prepaid, return receipt requested), or (iii) sent by recognized overnight courier service to the relevant party at its address listed above (or at such other address as the Guarantor or the Beneficiary may specify by written notice in accordance with this paragraph); and (b) shall be deemed delivered: (i) on the date delivered if by personal delivery; (ii) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed; or (iii) on the second business day following delivery to a recognized overnight courier service for next business day delivery.

10. <u>Entire Agreement</u>. This Guaranty represents the entire understanding and agreement of the Guarantor and the Beneficiary with respect to the subject matter hereof and supersedes all other negotiations, understandings and representations (if any) made by and between such parties. No course of dealing, course of performance or trade usage, and no parol evidence of any nature, shall be used to supplement or modify any terms hereof.

11. <u>Severability</u>. If any part of this Guaranty is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder of this Guaranty shall not be invalidated and shall be given full force and effect.

12. <u>Governing Law</u>. This Guaranty shall be governed by the laws of the State of Florida, without regard to the conflicts of law principles thereof.

13. <u>Consideration for Guaranty</u>. The Guarantor acknowledges and agrees that it has received sufficient consideration for its obligations hereunder. Specifically, the Guarantor acknowledges and agrees that it will benefit from the making of the loan evidenced by the Note.

14. <u>Development Order</u>. Notwithstanding anything to the contrary contained herein, Guarantor shall have no liability whatsoever under the terms of this Guaranty until the Development Order, as defined in the Note, is obtained and, if the Development Order is not obtained on or before December 1, 2010 (subject to any extension of such date in accordance with the terms of the Third Amendment to the Agreement for Purchase and Sale pursuant to which this Guaranty has been executed), this Guaranty shall be of no force and effect ab initio.

15. <u>Counterparts</u>. This Guaranty may be executed in two or more counterparts, each of which shall be deemed an original, or by facsimile transmission, but all of which together shall constitute one and the same agreement.

[SIGNATURE APPEARS ON THE FOLLOWING PAGE]

3

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty as of the day and year first above written.

BRITISH-AMERICAN INSURANCE COMPANY LIMITED

By _____

Name:   ROBERT FULLERTON

Title:   DIRECTOR.

STATE OF FLORIDA                )
                                ) ss.
COUNTY OF _____       )

I HEREBY CERTIFY, that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared _____, as _____ of British-American Insurance Company Limited, to me known to be the person described in and who executed this Guaranty, and he acknowledged to and before me that he executed the same. He is personally known to me or has produced a _____ as identification and did take an oath.

SWORN TO AND SUBSCRIBED before me this _____ day of _____ 200__.

_____
Notary Public
My Commission Expires:
(Seal)

## NOTE MODIFICATION AGREEMENT

THIS NOTE MODIFICATION AGREEMENT (this "Agreement") is entered into as of the 9th day of SEPTEMBER , 2008 (the "Effective Date") by and between BRITISH AMERICAN ISLE OF VENICE (BVI) LTD., a British Virgin Islands company (the "Maker"), and GREEN ISLAND HOLDINGS, LLC, a Florida limited liability company (the "Holder").

### RECITALS:

A.    Maker is the maker under that certain Purchase Money Promissory Note, dated January 7, 2008, in the original principal amount of $56,544,359.82 (the "Note"), which Note is held by Holder.

B.    The aggregate outstanding principal amount of the Note as of the date hereof is Fifty Three Million Two Hundred Seventy Four Thousand Three Hundred Fifty Nine Dollars and 82/100 ($53,274,359.82).

C.    Subject to the terms and conditions of this Agreement, Maker and Holder have agreed to amend the original maturity date and certain other provision of the Note, all as more specifically provided for in this Agreement.

NOW THEREFORE, IN CONSIDERATION OF TEN & NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, Maker and Holder hereby agree as follows:

1.    Recitals; Capitalized Terms.  The foregoing Recitals are true and correct and are incorporated herein by this reference as if set forth in their entirety. Any capitalized term not defined in this Agreement shall have the meaning ascribed to it in the Note.

2.    Prepayment. Maker shall make a principal prepayment to Holder on October 15, 2008 in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

3.    Purchaser of the Membership Interest in Corban Partners, LLC.

(a)    On October 15, 2008 (the "Closing Date"), Maker shall sell, transfer and assign to Holder, and Holder shall purchase from Maker, Maker's entire eighty percent (80%) membership interest (the "Membership Interest") in Corban Partners, LLC, a Florida limited liability company ("Corban"). In connection with the purchase and sale of the Membership Interest, Maker hereby makes the representations and warranties to Holder set forth on Exhibit "A" hereto and incorporated herein by this reference (the "Representations"). Notwithstanding the foregoing, as a condition to Holder's obligation to purchase the Membership Interest: (A) Maker shall have delivered to Holder a certificate, dated the Closing Date: (i) confirming that (x) all of the Representations are true and correct on the Closing Date as though made on such date and (y) Maker has complied with all of its obligations hereunder; and (ii) in which Maker represents and warrants to Holder that there has not been, since the date of this Agreement, any material adverse

8524/73305-001  Current/12006607v2

09/09/2008 02:17 PM

PLAINTIFF'S
EXHIBIT
D

change in the assets, liabilities, financial condition, results of operations or prospects of Corban; (B) all third-party consents that are required in connection with the sale and transfer of the Membership Interest, if any, shall have been obtained and remain unmodified and in full force and effect; (C) Maker shall have delivered to Holder resignations from all officers, directors and/or managers of Corban; (D) Shiva Ramberran shall have executed and delivered an operating agreement with respect to Corban in form and substance satisfactory to Holder; and (E) Maker shall have executed and delivered to holder an assignment of the Membership Interest in form and substance satisfactory to Holder. Between the date of this Agreement and the Closing Date, Maker shall (i) cause Corban to operate in the ordinary course of business; and (ii) not permit Corban to: (x) incur or guarantee any indebtedness; (y) issue or enter into any agreement calling for the issuance of any direct or indirect interest in Corban; or (z) enter into any material agreement or commit to any material expenditure.

(b)     The purchase price for the Membership Interest shall be Ten Million Dollars ($10,000,000.00). At the closing of the purchase of the Membership Interest, the purchase price shall be paid by reducing the principal amount of the Note by Ten Million Dollars ($10,000,000.00) (such that, together with the mandatory $5,000,000 prepayment required to be made pursuant to Section 3 of this Agreement, the outstanding principal balance of the Note shall be reduced on October 15, 2008 from $53,274,359.82 to $38,274,359.82). For the avoidance of doubt, until such time as the closing and the mandatory prepayment occur, Maker shall continue to pay interest on the aggregate outstanding principal balance of the Note (i.e. $53,274,359.82).

(c)     Effective as of the closing of the sale of the Membership Interest on the Closing Date, Maker does hereby unconditionally and irrevocably forever release and discharge Corban and each of the officers, directors and managers of Corban (and their respective affiliates, employees and agents) (collectively, the "Released Parties") from all claims and causes of action (whether at law or in equity) of Maker against any such Released Party arising or relating to any matter, event or occurrence occurring prior to the Closing Date, whether known or unknown, matured or unmatured, fixed or contingent (collectively, the "Released Matters").

(d)     Maker shall indemnify, defend and hold harmless Holder and its affiliates (collectively as indemnified parties, "Holder") from and against all losses, costs, damages and expenses (including reasonable attorneys' fees) incurred by Holder in connection with: (i) a breach by Maker of any of its representations, warranties or covenants contained in this Agreement or in any certificate or agreement delivered in connection herewith; (ii) the ownership of the Membership Interest prior to the Closing Date; (iii) the conduct and operation of the Corban business (including all liabilities associated therewith, whether fixed, contingent or otherwise) prior to the Closing Date; or (iv) claims of any employee, agent, consultant or other third party against Corban.

4.     Maturity Date. Section 1 of the Note is hereby deleted in its entirety and replaced with the following text:

"1.     MATURITY DATE. The entire outstanding principal balance of this Note, all accrued and unpaid interest and all other amounts due under this Note shall, if not earlier paid in accordance



with the terms of this Note, be due and payable on January 15, 2010 (the date upon which this Note matures in accordance with the foregoing is referred to herein as the "Maturity Date").

5.    Interest. Section 2 of the Note is hereby deleted in its entirety and replaced with the following text:

"2.    INTEREST RATE. Interest on the principal amount hereof outstanding from time to time shall accrue at the rate of nine percent (9%) per annum, simple interest. Accrued and unpaid interest shall be payable monthly, in arrears, on the first day of each calendar month."

6.    Principal Payments. Section 3.b. of the Note is hereby deleted in its entirety and replaced with the following text:

"b.    The outstanding principal balance of this Note shall be paid in four (4) quarterly payments of $9,568,589.96 each, beginning on January 15, 2009 and continuing on or before the 15th day of each quarter until the Maturity Date, at which time the final quarterly payment shall be made."

7.    Amendment of Section 15 of the Note. Section 15 of the Note is hereby deleted in its entirety and replaced with the following text:

"15.    [INTENTIONALLY OMITTED]"

8.    Estoppel. As of the Effective Date of this Agreement, Maker represents, warrants, covenants and agrees with Holder that Maker does not have any claim, charge, defense, offset or counterclaim against Holder with respect to Maker's obligations under the Note, the Security Agreement or any other document, instrument, certificate or agreement executed in connection therewith (collectively, the "Loan Documents"), or any other obligation which Maker may have to Holder. As of the Effective Date of this Agreement, no event has occurred that is a current event of default under the Note, the Security Agreement or any other Loan Document or, with the giving of notice or the passage of time, would ripen into an event of default under the Note, the Security Agreement or any other Loan Document.

9.    Ratification. Except as specifically set forth in this Agreement, the Note and every other Loan Document are each ratified and confirmed as written.

10.    Cooperation. Maker agrees from time to time, as may be required by the Holder, to execute and deliver such further instruments and documents and do all matters and things which may be convenient or necessary to more effectively and completely carry out the intention under the Note, the Security Agreement, each other Loan Document and this Agreement.



11.    Successors and Assigns.  This Agreement shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

12.    Amendment to Loan Documents.  This Agreement, the Note, the Security Agreement and all other Loan Documents may not be modified, amended, changed or terminated orally, but only by an agreement in writing executed by the parties Maker and Holder.

13.    Governing Law; Submission to Jurisdiction.  This Agreement shall be governed in all respects by the laws of the State of Florida.  Any suit, action or other legal proceeding arising out of or relating to this Agreement or any Loan Document shall be brought exclusively in the courts of the State of Florida, County of Palm Beach, or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of Florida, and each of the parties irrevocably submits to the exclusive jurisdiction of each such court in any such proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding will be heard and determined only in any such court and agrees not to bring any proceeding arising out of or relating to this Agreement in any other court.  The parties hereto each agree that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding on it and may be enforced in any court to the jurisdiction of which it is subject by a suit upon such judgment.

[EXECUTION PAGE FOLLOWS]



IN WITNESS WHEREOF, Maker and Holder have executed and delivered this Agreement as of the Effective Date first above written.

**MAKER:**

BRITISH AMERICAN ISLE OF VENICE (BVI) LTD., a British Virgin Islands company

By _____
Name:  BRIAN BRANKER
Title:  DIRECTOR

**HOLDER:**

GREEN ISLAND HOLDINGS, LLC, a Florida limited liability company

By _____
Name:  Chandra Pratt
Title:  member

## Exhibit "A"

### Maker's Representations and Warranties

Corban is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida, with full power and authority to conduct its business as it is now being conducted and to own or use the properties and assets that it purports to own or use. Corban is duly authorized to conduct business and is in good standing under the laws of each jurisdiction where such qualification is required.

The execution, delivery and performance of this Agreement by Maker has been duly authorized on the part of Maker.

This Agreement constitutes the valid and legally binding obligation of Maker, enforceable in accordance with its terms.

None of the execution, delivery or performance by Maker of this Agreement requires the authorization, consent, approval, exemption or other action by, or declaration or notice to or registration with, any person, entity or governmental or quasi-governmental entity or authority. The execution and delivery of this Agreement by Maker, and the consummation by Maker of the transactions contemplated hereby, do not constitute a violation or breach by Maker of: (i) any contract, agreement, understanding or instrument to which Maker is a party or by which Maker is subject or bound; (ii) any judgment, order, writ, injunction or decree issued against or imposed upon Maker; or (iii) any applicable law, order, rule or regulation of any governmental or quasi-governmental entity or authority.

All of the outstanding membership interests of Corban have been duly authorized, are validly issued and are fully paid and nonassessable.

Corban has no subsidiaries.

Maker exclusively owns all right, title and interest in and holds full legal, equitable and beneficial ownership of the Membership Interest, free and clear of any liens, security interests, encumbrances and restrictions on or conditions to transfer or assignment.  There are no outstanding agreements or commitments of any nature obligating Maker to transfer the Membership Interest or any interest therein to any other party.  Upon the sale, transfer and assignment of the Membership Interest hereunder, there shall be vested in Holder good and valid title to the Membership Interest, free and clear of any lien, security interest, encumbrance or restriction.

Corban's unaudited balance sheet and related statements of income, cash flows and changes in shareholders' equity as of and for the _____ month period ended _____, 2008 (a copy of which is attached hereto) fairly presents the financial condition of Corban as of such date and the results of operations of Corban for the period specified.

Except as set forth on the attached financial statement, Corban has no liabilities of any kind, character or description, whether known or unknown, absolute or contingent, accrued or

unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined, determinable or otherwise.

Corban has no employees.

Corban has no indebtedness.

No assets of Corban are subject to any lien, security interest or other encumbrance.

Corban is not a party to any contract, whether written or oral.

There is no pending or threatened litigation by or against Corban, nor is there any basis for any such litigation.

Corban is in compliance with all applicable legal requirements.

Corban has: (i) filed all tax returns that it was required to file; (ii) paid all taxes due and payable; and (iii) complied in all material respects with all applicable legal requirements relating to the payment and withholding of taxes from employees, if any, and other persons. All such tax returns are true, correct and complete in all material respects. No written claim or deficiency for any taxes has been asserted against Corban which has not been resolved and/or paid in full. No audits, investigations or proceedings before any governmental authority are currently pending with regard to any taxes or tax returns, and Corban has not received any written notice of any such audits, investigations or proceedings. There are no liens for taxes upon any property or assets of Corban.

There are no outstanding loans, contracts or business arrangements or relationships or other continuing transactions between Corban, on the one hand, and any equityholder, manager, director or executive officer thereof, any affiliate of such equityholder, or any member of such equityholder's, manager's, director's or executive officer's immediate family, or any person controlled by such equityholder, manager, director or executive officer on the other hand.

Maker has not pledged, hypothecated, transferred, assigned or otherwise encumbered any of the Released Matters.

Maker is not acting under duress or as a result of any mistake.

Maker, by executing this Agreement, has not relied on any inducements, promises or representations made by Holder or any of its managers, members, employees or agents.

Maker has had a full and complete opportunity to evaluate and investigate all claims against the Released Parties, and Maker intends, by virtue of executing this Agreement, to forever release and settle (effective upon the closing of the sale of the Membership Interest hereunder) all Released Matters with the Released Parties.



FROM :                              FAX NO. :                    Sep. 24 2008 10:20AM  P9

Maker has read this Agreement and has had all provisions explained to Maker by Maker's attorney at law prior to the execution of this Agreement.

Maker is not relying on any estimates of value or any other information furnished by Holder or any of its managers, members, employees or agents.



# DuBosar & Perez, P.A.

### ATTORNEYS AT LAW

SUITE 100
120 EAST PALMETTO PARK ROAD
BOCA RATON, FLORIDA 33432

———

TELEPHONE (561) 544-8980
FACSIMILE (561) 544-8988

HOWARD D. DuBOSAR
E-Mail: DubosarH@dubolaw.com

January 30, 2009

## DEFAULT NOTICE

### By Federal Express/Overnight Delivery

British American Isle of Venice (BVI) LTD
c/o BA Management Services, Inc.
950 South Pine Island Road, Suite A150
Plantation, Florida 33324
Attention: Robert Fullerton

And

British American Insurance Company Limited
c/o BA Management Services, Inc.
950 South Pine Island Road, Suite A150
Plantation, Florida 33324
Attention: Robert Fullerton

> **Re:** ***Green Island Holdings, LLC v. British American Isle of Venice (BVI), LTD ("BAI") and British-American Insurance Company Limited ("British American")***

Gentlemen:

This law firm has been engaged to represent the interests of Green Island Holdings, LLC ("Lender") in connection with the above referenced matter. Lender is the owner and holder of all documents executed and delivered in conjunction with Lender's agreement to finance a portion of BAI's purchase of 100% of the membership interests in Green Island Ventures, LLC. (the "Membership Interests"), including, without limitation, the following:

1. That certain Pledge and Security Agreement dated January 7, 2008 between BAI and Lender (the "Pledge Agreement");



PLAINTIFF'S
EXHIBIT
E

     2.     That certain Purchase Money Promissory Note dated January 7, 2008 in the original principal amount of $56,544,359.82 executed by BAI in favor of Lender as modified by that certain Note Modification Agreement dated September 9, 2008 entered into by and between BAI and Lender (collectively the "Note"); and

     3.     That certain Guaranty dated January 7, 2008 executed by British American in favor of Lender.

(The Note, Pledge Agreement, and Guaranty will collectively be referred to as the "Loan Documents")

Pursuant to the Note, BAI was obligated to make a payment in the amount of $9,568,589.96 by or before January 15, 2009. The Note is in default by virtue of BAI's failure to make said payment within ten (10) days from the date that same was due.

Pursuant to ¶ 10 of the Note, this letter will further serve to provide notice that Lender will exercise its option to accelerate the indebtedness evidenced by the Note ten days after the transmittal hereof without further notice as a result of which the entire principal balance of $38,274,359.82 will be due and owing, as well as all interest that has and will accrue hereafter at the default rate of 18% per anum. Moreover, Lender will be entitled to the payment of costs incurred as a result of efforts to pursue enforcement of its rights under the Loan Documents including, without limitation, reasonable attorneys' fees.

This notice is also being sent to Guarantor pursuant to the Guaranty. Lender owns and holds the Guaranty and is entitled to all the rights remedies provided for thereunder and at law or in equity. Accordingly, demand is hereby made upon Guarantor to pay all sums that are and will become due and owing under the Note pursuant to the Guaranty.

Also by virtue of BAI's default, Lender is entitled to exercise its remedies as a secured creditor. Accordingly, any action brought to enforce the obligations of BAI and British American will include a count to foreclose on the collateral that is the subject of the Pledge Agreement. Likewise, Lender reserves its right to pursue all available remedies as a secured creditor including, without limitation, at its option, the disposition of the Membership Interests in a commercially reasonable manner. Demand is further made upon BAI to comply with its obligations under the Pledge and Security Agreement and to refrain from interfering with the exercise of Lender's creditor remedies provided for therein and that are available as a matter of law.

In addition to bringing an action or actions on the Loan Documents, this firm will also undertake to investigate and prosecute any claims that Lender may have arising out

of the fraudulent transfers of any assets from BAI or British American.  In addition to the foregoing, Lender reserves the right to pursue all available legal and equitable ancillary remedies including, without limitation, injunctive relief and the appointment of a receiver.

**LENDER IS ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED BY LENDER OR ITS REPRESENTATIVES WILL BE USED FOR THAT PURPOSE.**

Nothing set forth herein is intended to nor shall it be deemed to modify, limit, reduce or waive any of Lender's rights, remedies and/or privileges under the Loan Documents or at law or in equity, all of which are specifically reserved.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Very truly yours,

Howard D. DuBosar

HDD/kd

cc:    Gabrielle Patrick, Esquire, BA Management Services, Inc. (Facsimile & Mail)
       William R. Bloom, Esquire, Holland & Knight (Facsimile & U.S. Mail)
       Andrew Gross, Esquire (Facsimile & U.S. Mail)
       Green Island Holdings, LLC (Facsimile & U.S. Mail)

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as
by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of
the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed C**

**FILED by ____ D.C.**
ELECTRONIC
**Feb. 19, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Green Island Holdings, LLC | British American Isle of Venice(BVI), Ltd |

**(b)** County of Residence of First Listed Plaintiff  Palm Beach County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  British Virgin Islands
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Howard D. DuBosar, Esq.
DuBosar & Perez, PA
120 E. Palmetto Park Road, Suite 100
Boca Raton, Florida 33432 (561) 544-8980

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|
| | (For Diversity Cases Only) and One Box for Defendant |

| II. BASIS OF JURISDICTION | | III. CITIZENSHIP | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*09CV80207 MARRA Johnson*

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☒ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus-Alien Detainee | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page): 
a) Re-filed Case ☐ YES ☒ NO  b) Related Cases ☐ YES ☒ NO
JUDGE _____  DOCKET NUMBER _____

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
Action brought on a Promissory Noet Guaranty and Pledge Agreement against two foreign companies.
Jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(2)
LENGTH OF TRIAL via _1_ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
February 19, 2009

FOR OFFICE USE ONLY
AMOUNT 350.00  RECEIPT # 725457  IFP